# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

---

**JOHN K. FITCH,**

                    **Plaintiff,**

**v.**

**AMERICAN ELECTRIC POWER SYSTEM
COMPREHENSIVE MEDICAL PLAN,**

                    **Defendant.**

**Case No. 21-cv-576**
**JUDGE EDMUND A. SARGUS, JR.**
**Magistrate Judge Elizabeth P. Deavers**

---

**AMERICAN ELECTRIC POWER SERVICE
CORPORATION as fiduciary of the
AMERICAN ELECTRIC POWER SYSTEM
COMPREHENSIVE MEDICAL PLAN**

                    **Plaintiff,**

**v.**

**JOHN K. FITCH, as administrator of the
ESTATE OF JOHN D. FITCH, AND GLORI
FITCH,**

                    **Defendants.**

**Case No. 2:21-cv-682**
**JUDGE EDMUND A. SARGUS, JR.**
**Magistrate Judge Elizabeth P. Deavers**

---

## OPINION AND ORDER

Two interrelated motions filed in the above-captioned cases are before the Court. The

first motion is a Motion to Remand *Fitch v. American Electric Power Systems Medical Plan*,

Case Number 2:21-cv-576 ("*Fitch I*"), to the Franklin County Probate Court.  (*Fitch I*, Case No.

2:21-cv-576, ECF No. 10.)  The second motion, filed by the defendants in *American Electric*

*Power Corporation v. John K. Fitch and Glori Fitch*, Case Number 2:21-cv-682 ("*Fitch II*"),

asks the Court to dismiss the complaint in *Fitch II* because (i) it does not fall within this Court's

1

subject matter jurisdiction and (ii) it fails to sufficiently state a claim upon which relief can be granted (the "Motion to Dismiss").  (*Fitch II*, Case No. 2:21-cv-682, ECF No. 8.)  In the same motion, the *Fitch II* defendants alternatively ask the Court to temporarily abstain from resolving AEP's Complaint.  (*Id.*)

For the reasons stated herein, the Court **GRANTS** both the Motion to Remand (*Fitch I*, Case No. 2:21-cv-576, ECF No. 10) and the Motion to Dismiss.  (*Fitch II*, Case No. 2:21-cv-682, ECF No. 8.)

## I.  Overview

This dispute seeks to resolve whether, under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*., an employee benefit plan is entitled to reimbursement from settlement proceeds that were already allocated to various wrongful death claims by an Ohio probate court. The Court does not reach this question, as it finds that it lacks subject matter jurisdiction over both cases before it.

### A.  Factual Background

On October 11, 2019, John D. Fitch ("Decedent") was critically injured in a motor vehicle accident.  (*Fitch II*, ECF No. 8 at PageID #36.)  He passed away the following day after receiving emergency medical treatment.  (*Id.*)  Decedent's mother, Glori Fitch, a named defendant in *Fitch II,* was employed at American Electric Power ("AEP"), the plaintiff in *Fitch II*.  By virtue of Glori Fitch's employment at AEP, Decedent was a beneficiary of the American Electric Power System Comprehensive Medical Plan ("the AEP Plan" or "the Plan"), a self-funded employee welfare benefit plan.  (*Id.* at PageID #35-36.)

The AEP Plan contained various subrogation and reimbursement provisions related to any "Recovery" obtained by a "covered person" (*i.e.*, a plan participant or beneficiary) for whom

the Plan had paid medical benefits after he or she suffered an injury or illness.  (*Fitch II*, ECF No. 10-1 at PageID #200.)  Under the Plan, such "Recovery" consisted of any "monies received from any person or party, any person's or party's liability insurance, uninsured/underinsured motorist proceeds . . . [and] 'no-fault' insurance and/or automobile medical payments coverage, whether by lawsuit, settlement or otherwise."  (*Id.* at PageID #201.)

The AEP Plan's subrogation provision, in relevant part, stated that the Plan would have "first priority" to recover the medical benefits it paid on a covered person's behalf from any third party who agreed to compensate that person for his or her illnesses or injuries.  (*Id.*)  It further stated that the AEP Plan "has the right to take whatever legal action it sees fit against any person, party or entity to recover the benefits paid under the Plan."  (*Id.*)

In the event the AEP Plan failed to subrogate its claim, it reserved the right to directly pursue a covered person who, after obtaining "Recovery," did not reimburse the Plan for any medical "benefits the Plan paid on [their] behalf."  (*Id.*)  The AEP Plan went on to articulate its reimbursement procedure, which required covered persons or their legal representative to "hold in trust for the Plan the proceeds of the gross Recovery."  (*Id.*)  If the covered person refused to adhere to this policy, the AEP Plan stated that it could "deduct any of the unsatisfied portion of the amount of benefits the Plan has paid . . . from any future benefit [received by the covered person] under the Plan."  (*Id.*)  The reach of this reimbursement provision extended to any "relatives, heirs, and/or assignees [who] make any Recovery because of injuries sustained by the covered person."  (*Id.* at PageID #202.)

## B.  The Estate's Wrongful Death Settlements

Decedent's estate (the "Fitch Estate") is administered by his father, John K. Fitch ("Administrator of Fitch Estate" or "the Administrator").[1] In the year after Decedent's death, the Administrator, pursuant to his official capacity, resolved two settlement claims: One in the amount of $500,000 from the at-fault driver's liability insurance carrier (the "At-Fault Settlement"), and another in the amount of $100,000 from State Farm—the Administrator's automobile insurer—for medical payments made on Decedent's behalf (the "Medical Payments Settlement") (collectively, the "Settlement Proceeds").  (*Fitch II*, ECF No. 8 at PageID #36.)

On May 11, 2020, the Administrator received a letter from Anthem Blue Cross and Blue Shield ("Anthem"), the AEP Plan's claim administrator, which asserted the Plan's right to enforce its subrogation and/or reimbursement provisions against the Fitch Estate to recover $110,764.55 in medical expenses allegedly paid on Decedent's behalf after his fatal accident (the "May 11 Letter").  (*Fitch I*, ECF No. 14-1.)  Several months later, on September 10, 2020, the Administrator allegedly received another letter referencing the same Plan provisions from Anthem.  (*Fitch I*, ECF No. 14-2 at PageID #81.)  This letter, however, asserted a $101,582.46 lien against the Fitch Estate.[2]  (*Id.*)

On October 12, 2020—six months after the Administrator received the May 11 Letter, and one year after Decedent's death—the Administrator applied to have the At-Fault Settlement and Medical Payments Settlement approved by the Franklin County Probate Court (the "Probate Court").  (*Id.* at PageID #85-87.)  The application requested the court to allocate the entirety of the Settlement Proceeds to the wrongful death claims held by the Decedent's statutory heirs.

---

[1] In this capacity, Mr. Fitch filed *Fitch I* in the Court of Common Pleas for Franklin County, Ohio, and, similarly, is named as a defendant in *Fitch II*.

[2] Notwithstanding the discrepancy between the two Anthem letters the Administrator received, this is the amount AEP now asserts the Plan paid "for Decedent's accident-related medical treatment."  (*Fitch II*, ECF No. 1 at PageID #2.)

(*Id.*)  It further specified that (i) the Settlement Proceeds represented only a "partial settlement," as negotiations between the Administrator and State Farm were "ongoing," (ii) Anthem was asserting a lien totaling $101,582.46 against the Estate, and (iii) said lien would be disputed by the Fitch Estate under Ohio law.  (*Id.* at PageID #87.)  The Probate Court approved the application that same day without a hearing.  (*Id.*)  Accordingly, all $600,000 of the Settlement Proceeds were designated as wrongful death proceeds to be disbursed amongst Decedent's immediate family.  (*Id.*)  The Fitch Estate remained open in the Probate Court.  (*Id.*)

 On October 22, 2020, the Administrator notified Anthem that it had requested the Probate Court to hold a hearing for, and ultimately approve, a partial settlement obtained "in connection with [Decedent's] wrongful death claim."  (*Id.* at PageID #81.)  The Administrator's message additionally stated that, because the proceeds of this partial settlement did not constitute assets of the Fitch Estate, they were immune from the Plan's reimbursement claim.  (*Id.* at PageID #82.)  The letter further specified that the Fitch Estate had no recoverable assets at all.  (*Id.*)

On November 4, 2020, the AEP Plan responded by reasserting its right to reimbursement under the benefit plan from any settlement proceeds arising from a survival action or wrongful death claim.  (*Fitch II*, ECF No. 10 at PageID #59.)  On November 5, 2020, the Administrator informed the AEP Plan that the Probate Court had already approved its settlement application. (*Fitch I*, ECF No. 14-2 at PageID #84.)  Again, the Administrator asserted, the Settlement Proceeds were not part of the Fitch Estate, and, accordingly, the Fitch Estate had no assets from which the Plan could be reimbursed.  (*Id.*)

### C.  Procedural History

This litigation began with the Administrator's filing of *Fitch I*, an action for declaratory judgment against the AEP Plan, on January 15, 2021 in the Franklin County Court of Common Pleas.  (*Fitch I*, ECF No. 1-2 at PageID #9-11.)  The complaint, in short, challenges the AEP Plan's assertion that it is "entitled to recover $101,582.46 against the aforementioned wrongful death proceeds," and requests a legal declaration that the AEP Plan is "entitled to no monies as a result of Decedent's accident."  (*Id.* at PageID #10-11.)

On February 9, 2021, the Plan removed *Fitch I* to this Court on the basis that it was preempted under ERISA.  (Notice of Removal, *Fitch I*, ECF No. 1.)  One month later, the Administrator moved to remand the case to the Franklin County Probate Court.[3]  (*Fitch I*, ECF No. 10.)

In between the AEP Plan's removal of the declaratory action and the Fitch Estate's Motion to Remand, AEP, as a fiduciary of the Plan, filed the *Fitch II* Complaint in this Court.  (*Fitch II*, ECF No. 1.)  The Complaint, in sum, seeks to attach equitable liens against those portions of the Settlement Proceeds that were obtained by, or are allegedly in the possession of, the Fitch Estate and/or Glori Fitch (the "Fitches").  (*Id.* at PageID #6-7.)  AEP also seeks to enjoin the Fitches from "transferring or disposing of" the Settlement Proceeds.  (*Fitch II*, ECF No. 1 at PageID #6-7.)

Soon after AEP filed its Complaint, the Fitches moved the Court (i) to dismiss it for lack of subject matter jurisdiction and for AEP's failure to state a sufficient claim for relief, or,

---

[3] As noted, *Fitch I* was initially filed (and removed from) the Franklin County Court of Common Pleas. Now, the Administrator asks the Court to remand the case to the Franklin County Probate Court, which is a separate division of the Franklin County Court of Common Pleas. *See* Ohio Rev. Code § 2101.01(A). Neither AEP nor the AEP Plan challenge whether this form of remand is permitted under the federal remand statute, 28 U.S.C. § 1447. To be sure, § 1447(d) broadly states that federal courts are permitted to remand a cause of removed action "to the State court" where it was originally filed. The statute does not otherwise discern whether this "State court" must be within the same division as the court from which the action was removed. *See* 28 U.S.C. § 1447. Nor is the Court aware of any such constraint. Thus, the Administrator designation of the Probate Court, appears, for purposes of remand, to be procedurally proper.

alternatively, (ii) to abstain from resolving AEP's Complaint until the Fitch Estate is closed. (*Fitch II*, ECF No. 8.)  Recognizing that *Fitch I* and *Fitch II* address the same issue—that is, whether the AEP Plan entitles AEP to any portion of the Settlement Proceeds—the Court consolidated the cases on March 22, 2021.  (*Fitch I*, ECF No. 12.)

 Thus, at base, there are now two interrelated, fully briefed arguments before the Court. First, the Fitches argue that, for various reasons, the Court lacks subject matter jurisdiction to resolve either *Fitch I* or *Fitch II.* They further contend that AEP's Complaint in *Fitch II* does not state a sufficient claim for relief under ERISA. Because the Court agrees with the Fitches' first argument, it need not resolve the second. *See Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990) ("[W]e are bound to consider the 12(b)(1) motion first, since the rule 12(b)(6) challenge becomes moot if this court lacks subject matter jurisdiction.").

## II.  Jurisdictional Arguments

 Embedded within *Fitch I* and *Fitch II* are two intertwined jurisdictional issues. First, the Fitches argue that the Court is barred from adjudicating AEP's Complaint in *Fitch II* by the "probate exception," a niche, judicially crafted caveat to federal question jurisdiction.  (*Fitch II*, ECF No. 8 at PageID #40.)  Separately, the Administrator of the Fitch Estate argues that the declaratory action at the center of *Fitch I* is—contrary to AEP's assertion—not "completely preempted" by ERISA.  (*Fitch I*, ECF Nos. 1, 10.)  Thus, the Administrator concludes, *Fitch I* can only be resolved by the Franklin County Probate Court. The Court agrees with both arguments.

 The United States Supreme Court and United States Court of Appeals for the Sixth Circuit have cautioned federal courts to distinguish between arguments pertaining to "jurisdiction" and those which address whether a party has sufficiently stated a claim for relief—

which, at times, can seemingly overlap. *Primax Recoveries, Inc. v. Gunter*, 433 F.3d 515, 518 (6th Cir. 2006). To be sure, judicial inquiries into federal subject matter jurisdiction seek only to determine whether a federal court has the power to adjudicate the claim(s) before it. *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 89 (1998). These inquiries do not, in other words, address whether a specific claim for relief is sufficiently stated. *See Id.* ("It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject matter jurisdiction, i.e., the courts' statutory or constitutional power to adjudicate the case."); *Primax*, 433 F.3d at 519-20 (finding federal subject matter jurisdiction over an ERISA § 502(a)(3) claim notwithstanding the claim's facial invalidity). Thus, while treading upon issues pertinent to the Fitches' Rule 12(b)(6) motion, the Court's analysis below does not purport to resolve it.

### A. ERISA's Enforcement Mechanisms

To inform the Court's forthcoming analysis, it is essential to understand the purpose of ERISA and the relevant (and exclusive) forms of relief the statute provides.

ERISA was enacted by Congress for the purpose of protecting the participants and beneficiaries of employee benefit plans "by setting out substantive regulatory requirements" for plan fiduciaries. *Aetna Health v. Davila*, 542 U.S. 200, 208 (2004). To ensure the uniform enforcement of this regime, ERISA provides an exhaustive list of "remedies and sanctions" that are solely available to plan participants, beneficiaries, and fiduciaries in federal court. ERISA § 502(a), 29 U.S.C. § 1132(a); *Davila*, 542 U.S. at 208. Two of these mechanisms—ERISA §§ 502(a)(1)(B) and 502(a)(3)—are at issue.

Under ERISA § 502(a)(1)(B), a participant or beneficiary of an ERISA-qualified plan may bring a civil action "to recover benefits due to him under the terms of the plan, to enforce

his rights under the plan, or to clarify his rights to future benefits under the terms of the plan." 29

U.S.C. § 1132(a)(1)(B). In this regard, it is the primary mechanism available to the participants

and beneficiaries of an ERISA-regulated plan who seek to challenge a denial of medical benefits.

*See Davila*, 542 U.S. at 208.

By contrast, ERISA § 502(a)(3) permits "plan participants, beneficiaries, *and* fiduciaries"

to bring civil enforcement actions to either:

> (A) enjoin any act or practice which violates any provision of this subchapter or
> the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to
> redress such violations or (ii) to enforce any provisions of this subchapter or
> the terms of the plan;

29 U.S.C. § 1132(a)(3) (emphasis added). Notably, ERISA § 502(a)(3) functions as the

exclusive mechanism by which a plan fiduciary can enforce in equity the reimbursement or

subrogation terms of the plan it administers. *See* 29 U.S.C. § 1132(a); *Sereboff v. Mid Atl. Med.*

*Servs.*, 547 U.S. 356, 359 (2006).

Here, only one ERISA claim—AEP's § 502(a)(3) claim, which seeks to attach various

equitable liens to the Settlement Proceeds—is technically at issue. (*Fitch II*, ECF No. 1.)

Nevertheless, the parties' arguments for and against the remand of *Fitch I* largely center on the

Fitch Estate's ability (or lack thereof) to bring an ERISA enforcement claim against the AEP

Plan in lieu of the declaratory action it filed in state court. (*Fitch I*, ECF Nos. 14-15.) These

arguments are addressed below.

### B.  The Fitches' Motion to Dismiss for Lack of Subject Matter Jurisdiction

### 1. Standard of Review

Motions to dismiss a complaint for lack of subject matter jurisdiction "fall into two

general categories: facial attacks and factual attacks." *U.S. v. Ritchie*, 15 F.3d 592, 598 (6th Cir.

1994). "A facial attack is a challenge to the sufficiency of the pleading itself," whereas "[a]

factual attack challenges "the factual existence of subject matter jurisdiction." *Id.* The distinction

between the two is significant: for facial attacks, federal courts must take the initial complaint's

material allegations as true and construe them in the "light most favorable" to the non-movant;

for factual attacks, no level of presumptive truthfulness is warranted. *Id.* Rather, "the court is free

to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Id.*

Unlike a factual attack, a "facial attack challenges subject matter jurisdiction without

disputing the facts alleged in the complaint." 5B Charles Alan Wright & Arthur R. Miller,

*Federal Practice and Procedure* § 1350 (3d ed. 2004). Here, the Fitches argue that the Court

does not have subject matter jurisdiction over the AEP Complaint because the "probate

exception" bars it from "interfering with" the Probate Court's control over the Settlement

Proceeds.  (*Fitch II*, ECF No. 8 at PageID #40-44.)   The Fitches do not, however, dispute the

facts alleged in AEP's Complaint.  (*Id.*)  Thus, they have mounted a facial attack, and the Court

must construe all material allegations in the complaint in AEP's favor. *See Ritchie*, 15 F.3d at

598.

### 2.  The "Probate Exception"

Federal courts are permitted to "exercise subject matter jurisdiction over 'all civil actions

arising under the Constitution, laws, or treaties of the United States.'" *Arbaugh v. Y&H Corp.*,

546 U.S. 500, 505 (2006) (citing 28 U.S.C. § 1331). This broad authorization to exercise

jurisdiction over "federal questions," however, comes with various caveats. One such caveat is

the "probate exception," which strips federal courts of subject matter jurisdiction over otherwise-

justiciable claims if the claim's adjudication would (i) require the court to probate a will or

administer an estate or (ii) "interfere with the probate proceedings or assume general jurisdiction

of the probate or control of the property in the custody of [a] state court." *Markham v. Allen*, 326 U.S. 490, 494 (1946).

This exception, however, has its limits. For one, the term "probate" is traditionally "construed quite narrowly" to apply solely to the probate of a will or "other proceedings concerning a decedent's estate." *Community Ins. Co. v. Rowe*, 85 F.Supp.2d 800, 805 (S.D. Ohio 1999) (citing *Rice v. Rice Found.*, 610 F.2d 471, 474-75 (7th Cir. 1988)). The scope of the second clause (*i.e.*, the "interference" clause) is similarly constrained. In *Marshall v. Marshall*, for example, the Supreme Court resolved that the "interference" clause only extends to actions that would require a federal court to exercise *in rem* jurisdiction over *res* (*i.e.*, property) that is currently within the custody of a state court. 547 U.S. 293, 296 (2006). In any other scenario—*e.g.*, one where a federal court must exercise *in personam* jurisdiction over the defendant, or one where the *res* is no longer "in the custody of" a probate court—the probate exception's "interference" clause is seemingly inapplicable. *Id.*; *Chevalier v. Estate of Barnhart*, 803 F.3d 789, 802 (6 th Cir. 2015); *see also Boesky v. Siegel*, 305 F.Supp.3d 779, 785 (E.D. Mich. 2018) ("Case law rejects application of the probate exception, based on disposing of property within the custody of the probate court, where the probate proceedings have concluded.").

Accordingly, the Sixth Circuit has construed the application of the probate exception to require a three-pronged analysis: First, a court must determine if the claim at issue would specifically require the court to probate a will or administer an estate. *Chevalier*, 803 F.3d at 801. If not, the court must next determine whether the cause of action is an action *in rem*—that is, whether it seeks to "determine[e] the title to property and the rights of the parties, not merely amongst themselves, but also against all persons at any time claiming an interest in the property." *Id.* If so, the court must finally determine if the *res* at issue is currently "in the

11

custody" or "control" of a state court. *Id.* (noting the court's final task to "determine whether [petitioner] has asked a federal court to 'elbow its way into' an ongoing 'fight[] over property . . . in [another] court's control.") (citing *Struck v. Cook Cnty. Pub. Guardian*, 508 F.3d 858, 860 (7th Cir. 2007)).

### 3. Analysis

AEP's Complaint seeks, under ERISA § 502(a)(3), to attach two equitable liens against the Settlement Proceeds—one against the portion allegedly in the possession of the Administrator of the Fitch Estate, and another against the portion allegedly obtained by Decedent's mother, Glori Fitch. (*Fitch II*, ECF No. 1 at PageID #5-6.)

The Fitches, in their Motion to Dismiss, argue that the probate exception strips this Court of the ability to exercise jurisdiction over either of these claims. (*Fitch II*, ECF No. 8 at PageID #40-44.) Specifically, they contend that, because this action asks the Court to exercise *in rem* jurisdiction "to reallocate funds inconsistent with the allocation made by the Franklin County Probate Court, where the Estate [] remains open and subject to the court's jurisdiction," the probate exception applies. (*Id.* at PageID #44.) AEP, in response, argues that the probate exception is wholly inapplicable because (i) the Fitch Estate deprived the Probate Court of any jurisdiction over the dispute when it filed the *Fitch I* declaratory action in the Franklin County Court of Common Pleas and (ii) the Probate Court does not have the power to resolve its "purely contractual" claim against Glori Fitch. (*Fitch II*, ECF No. 10.) This Court disagrees.

### a. AEP's Claim Against the Fitch Estate

AEP first argues that, under Ohio law, the Probate Court lost any jurisdiction it had to adjudicate AEP's *Fitch II* claim against the Fitch Estate when the Administrator filed the declaratory action in *Fitch I*. (*Fitch II*, ECF No. 10 at PageID #61.) Accordingly, AEP

contends, the probate exception—which only applies to actions within the jurisdiction of a state court—cannot apply. (*Id.*)

In support, AEP first cites to Ohio Rev. Code § 2117.37, which provides that creditors with a contingent claim against an estate must generally present the claim to the estate's executor or administrator within six months after the death of the decedent or within two months after the cause of action accrues, "whichever is later." Thereafter, the estate's representative can reject the claim "by giving the claimant written notice of the disallowance of the claim" pursuant to Ohio Rule of Civil Procedure 73, which, in relevant part, dictates the service of process in probate court proceedings. Ohio Rev. Code § 2117.11.

AEP argues that the May 11 Letter sent by Anthem to the Administrator constituted the presentment of a contingent claim to the Fitch Estate under Ohio Rev. Code § 2117. (*Fitch II*, ECF No. 10 at PageID #61.) It further contends that, when the Administrator filed the declaratory action in *Fitch I*, the Fitch Estate effectively "rejected" it claim under Ohio Rev. Code § 2117. (*Id.*) This, according to AEP, is significant, as Ohio common law explicitly holds that a probate court loses "subject matter jurisdiction to enter an order adjudicating a claim against an estate" after the estate "rejects" that claim. *In re Estate of Vitelli*, 110 Ohio App. 3d 181, 184 (2d Dist. 1996) (collecting cases). In that event, "[t]he only remedy for the claimant . . . is an action in a court of general jurisdiction." *Id.* Thus, AEP argues, the Fitch Estate's action for declaratory relief effectively stripped the probate court of jurisdiction over AEP's Complaint, precluding application of the probate exception. (*Fitch II*, ECF No. 10 at PageID #62-64.)

The Fitches do not contest the existence of the "rejection" rule cited by AEP. They argue, instead, that it is irrelevant, as the Fitch Estate never sufficiently "rejected" AEP's claim for reimbursement. (*Fitch II*, ECF No. 11 at PageID #243.) In support, the Fitches rely on *Kraus v.*

*Hanna*, which reiterated the Ohio Supreme Court's position in *Hawkes Hosp. of Mt. Carmel v. Colley* that a "rejection" of a creditor's claim under Ohio Rev. Code § 2117 must be "plain and unequivocal." 11th Dist. Portage No. 2002-P-0093, 2004-Ohio-3928 (citing *Hawkes Hosp. of Mt. Carmel*, 2 Ohio St.3d 40, 42 N.E.2d 761 (1982)).

Both *Kraus* and *Hawkes* deal with similar scenarios to the instant case. In *Hawkes*, the executor of an estate did not sufficiently "reject" a creditor's claim when he sent the creditor a letter that simultaneously (i) asserted that the claim was untimely and (ii) informed the creditor that the executor had sought guidance from the probate court as to the claim's merits. *Hawkes* at 42-43. Highlighting the internal "inconsistency" of the estate's letter, the Ohio Supreme Court held that it did not effectively "reject" the creditor's claim because its "concurrent referral of the dispute" to the probate court allowed the creditor to "reasonably infer that the rejection was not final." *Id.* at 43. Rather, the estate's rejection needed to be "plain and unequivocal"—that is, it needed to prohibit any impression that the estate was still mulling over the validity of the creditor's claim. *Id.*

By contrast, in *Kraus*, an executor's "certified letter" constituted a valid "rejection" under Ohio Rev. Code § 2117 even though the estate filed an action for declaratory relief shortly thereafter in a court of common pleas. *Kraus* at 1, 6. This was so because (i) the estate's letter fully rejected the creditor's claim *without* referring it to an adjudicatory body and (ii) the creditor had previously admitted that, in her opinion, the letter constituted a full rejection of her claim. *Id.* at 6.

Here, the Fitches do not contest the timeliness of AEP's contingent claim. They do, however, argue that the Fitch Estate's declaratory action did not constitute a "plain and

unequivocal" rejection of that claim. (*Fitch II*, ECF No. 11 at PageID #243-44.) The Court agrees.

The declaratory action in *Fitch I* asserts the following:

> 15. Controversies have arisen between [the Fitch Estate] and AEP Medical Plan concerning the rights and duties of Plaintiff (as Administrator) and AEP Medical Plan under the insurance policy issued by AEP Medical Plan. Specifically, AEP Medical Plan alleges a right to recover movies, and Plaintiff denies the allegation and asserts AEP Medical Plan is not entitled to recover anything. A declaration of rights of the parties is necessary for there to be a resolution of the foregoing dispute.
>
> WHEREFORE, Plaintiff demands a declaratory judgment against AEP Medical Plan declaring that AEP Medical Plan is entitled to no monies as a result of the Decedent's Accident.

(*Fitch I*, ECF No. 1-2 at PageID #10-11.)

As the Ohio Supreme Court reiterated in *Hawkes*, written notice that either (i) "is simply argumentative and uncertain" or (ii) rejects the claim, but "concurrently" refers it for adjudication cannot constitute a "plain and unequivocal rejection" under Ohio Rev. Code § 2117. *Hawkes* at 42, 44. Here, the Fitch Estate's declaratory action forcefully denied that the AEP Plan was entitled to any of the Settlement Proceeds in a written action that, by its very nature, referred the dispute to the Franklin County Court of Common Pleas. (*Fitch I*, ECF No. 1-2.) Indeed, the Fitch Estate's desire to have the court resolve its "rights and duties" under the AEP Plan implies not only its uncertainty as to the validity of the Plan's reimbursement claim, but its willingness to accept the claim if the court so ruled. (*Id.*) It certainly does not prohibit any impression that the estate is still mulling over the validity of the creditor's claim. *Hawkes* at 43. Accordingly, the Fitch Estate's declaratory action does not suffice as a "rejection" of the AEP Plan's contingent claim.

AEP makes no other contention that would preclude the Court from weighing the probate exception's potential applicability to its claim against the Fitch Estate. Thus, the exception remains in play.

**b.      AEP's Claim Against Glori Fitch**

Separately, AEP contends that the probate exception cannot apply to its claim against Glori Fitch because Ms. Fitch, as a plan participant, has an "independent duty" to abide by its reimbursement provision.  (*Fitch II*, ECF No. 10 at PageID #65.)  To support its argument, AEP points to the fact the AEP Plan's reimbursement provision extended to a covered person's "relatives, heirs and/or assignees" who, "because of injuries sustained by the covered person," obtain "Recovery".  (*Fitch II*, ECF No. 10-1 at PageID #202.)

Accordingly, AEP characterizes its claim against Ms. Fitch as one that does not arise from its position as "a creditor of the Estate," but, rather, from its status as a party in contractual privity with Ms. Fitch, who, as a statutory heir of Decedent, must reimburse the Plan with her portion of the Settlement Proceeds.  (*Fitch II*, ECF No. 10 at PageID #65.)  To that end, AEP argues, the probate exception does not preclude the Court from adjudicating its claim, as Ohio probate courts "do not have jurisdiction to adjudicate the enforceability of a contract that falls outside the administration of the [Fitch] Estate."  (*Id.*)

AEP relies on *Zuendel v. Zuendel* to reinforce its point. 63 Ohio St.3d 733, 590 N.E.2d 1260 (1992). There, the Ohio Supreme Court had to determine whether a state probate court could enforce a contract entered into by the beneficiaries of an estate (one of which was the estate's executor) which contradicted the testator's division of the estate in his will. *Id.* at 735. The court, in reviewing the pertinent Ohio law, first found that Ohio probate courts have jurisdiction over all disputes that "arise[] with respect to [the] duties related to the administration

of an estate." *Id.* at 736. It found thereafter, however, that the contract at issue did not relate to the administration of the estate because it had "no bearing upon the duties of the executor," who, regardless of the agreement he entered into, was bound by law "to administer the estate . . . in accordance with the terms of the will." *Id.* Accordingly, because the contract the parties sought to enforce was "not directly related" to the estate's administration, it did not fall within the probate court's jurisdiction. *Id.* at 737.

Along that same line, AEP argues that, here, the contract it seeks to enforce in equity against Glori Fitch—that is, the AEP Plan—does not directly relate to the administration of the Fitch Estate. (*Fitch II*, ECF No. 10 at PageID #66.) Thus, AEP concludes, its claim against Ms. Fitch falls exclusively within the jurisdiction of the federal judiciary. (*Id.*)

As both parties concede, wrongful death proceeds—despite being predicated on a decedent's death—are not considered assets of that decedent's estate.[4] *See* Ohio Rev. Code § 2125.02(A)(1) (stating that wrongful death claims are brought for the "exclusive benefit" of a decedent's parents, who are "rebuttably presumed to have suffered damages by reason of the wrongful death," as well as for the "exclusive benefit" of the decedent's "other next of kin"); *State ex. rel Golberg v. Mahoning Cty. Prob. Ct.*, 93 Ohio St.3d 160, 753 N.E.2d 192, 197 (2001); *Estate of Shackelford*, 2016-Ohio-1431, 63 N.E.3d 584 ¶ 13 (12th Dist.). Accordingly, under AEP's interpretation of *Zuendel*, Ohio probate courts—which are vested with exclusive jurisdiction over the approval of wrongful death settlements[5]—seemingly possess no ability to adjudicate independent claims that seek to recoup funds *from* those settlements, as any such

---

[4] (*Fitch II*, ECF No. 10 at PageID #66; *Fitch I*, ECF No. 10 at PageID #48.)
[5] *Slater v. Ohio Dep't of Rehab. & Corr.*, 10th Dist. Franklin 2018-Ohio-1475, 111 N.E.3d 492, 498; *see also* Ohio Rev. Code §§ 2101.24, 2125.02(C).

claim does not "directly relate" to the administration of an estate. *See Zuendel* at 737. This argument is not well taken.

Ohio's probate courts are vested with the "plenary power" to "dispose fully of any matter that is properly before the court." Ohio Rev. Code § 2101.24(C). One such matter, as noted above, is the approval, allocation, and distribution of wrongful death settlements. *See* Ohio Rev. Code §§ 2101.24, 2125.02(C). Indeed, to "dispose fully" of these matters, Ohio's probate courts have adjudicated ERISA claims that are analogous to those brought by AEP. *See Admin. Comm. of the Dillard's, Inc. Grp. Health, Dental, & Vision Plan v. Sarrough*, No.1:14-cv-01165, 2015 WL 3466568, at *1 (N.D. Ohio June 1, 2015) (ERISA plan intervened in estate proceedings two years after the decedent's death and "extensively litigated" its right to reimbursement from various wrongful death settlements obtained by the estate's administrator); *Estate of Shackelford*, 2016-Ohio-1431, 63 N.E.3d 584, at ¶ 8 (probate court took into account "the specific terms and provisions" of an ERISA plan after the plan's administrator intervened in, and objected to, a settlement application filed by the executor of an estate). These actions are consistent with the recognized ability of Ohio's probate courts to adjudicate other third-party claims that seek compensation from the proceeds of a wrongful death settlement. *See*, *e.g.*, *In re Kinross*, 84 Ohio App.3d 335, 340, 616 N.E.2d 1128 (1st Dist. 1992) (holding that a probate court had subject matter jurisdiction over a fee dispute between counsel who were engaged to prosecute a wrongful death action that ultimately settled).

Taken together, Ohio's statutes and judicial precedent make clear that its probate courts can, contrary to AEP's assertion, properly exercise jurisdiction over the type of claim it now brings against Glori Fitch. Nevertheless, AEP essentially contends that the Fitch Estate actively prevented it from "object[ing] to the proposed [settlement] allocation." (*Fitch II*, ECF No. 10 at

PageID #63.) Specifically, AEP takes issue with the Fitch Estate for (i) only notifying AEP of its settlement application until ten days *after* it was approved by the Court, and (ii) filing "an incomplete and misleading motion" which, AEP implies, gave the Probate Court the impression that there were no outstanding claims related to the Settlement Proceeds. (*See id*.)

The record demonstrates that the Fitch Estate failed to communicate the status (or existence) of its settlement application until ten days after the application was approved.[6] It also demonstrates, however, that the Probate Court had notice of AEP's claim, given that the Narrative Statement accompanying the Fitch Estate's settlement application explicitly stated that the Estate would dispute a lien, asserted by Anthem, "totaling $101,582.46." (*Fitch I*, ECF No. 14-2 at PageID #87.)

Thus, it appears that the Probate Court, in its own discretion, determined that neither notice to AEP (vis-à-vis Anthem) nor a hearing were required for it to properly allocate the Settlement Proceeds. *See Estate of Shackelford*, 2016-Ohio-1431, 63 N.E.3d 584, at ¶ 14 (noting that, under Ohio Rev. Code § 2125.03, probate courts are solely required to "distribute wrongful death settlement proceeds in an equitable manner 'without regard to the statute of dissent and distribution, and without regard to any precise mathematical formulae'") (citing *In re Molitor,* 12th Dist. Brown No. CA2012-06-013, 2013-Ohio-525); Loc.R. 70.1 of the Franklin County Probate Court ("The application to settle a claim for wrongful death and the apportionment of the proceeds are two distinct matters for which the court *may* require separate hearings") (emphasis added). The Court will not second-guess this decision. Indeed, even if the Court was so

---

[6] In its October 22, 2020 correspondence, the Fitch Estate told AEP that it had requested the Franklin County Probate Court "[to] approve a partial settlement of the wrongful death claim." (*Fitch I*, ECF No. 14-2 at PageID #82.) As noted, it wrote this notwithstanding the fact that the Probate Court had already approved the Estate's settlement application without a hearing on October 12, 2020. (*Id.* at PageID #88.)

inclined, it would be powerless to contravene the Probate Court's order. *See* Full Faith and Credit Act, 28 U.S.C. § 1738 (mandating federal courts to afford "[t]he records and judicial proceedings of any [state] court . . . the same full faith and credit in every court within the United States").

Accordingly, the probate exception remains applicable to AEP's claim against Glori Fitch.

### c.   The Probate Exception Applies

Having determined that both of AEP's claims could fall into the Probate Court's jurisdiction, the Court must now determine whether the probate exception *currently* bars the Court from adjudicating AEP's ERISA § 502(a)(3) action against the Fitches. This, ultimately, boils down to whether the Settlement Proceeds are still within the "custody" or "control" the Probate Court. *See Chevalier*, 803 F.3d at 801. The Court finds that they are.

Under the three-prong test elaborated by the Sixth Circuit in *Chevalier*, the Court must first ask whether adjudicating AEP's Complaint would require it to probate a will or administer an estate. *Chevalier*, 803 F.3d at 801. Such is not the case. No will is at issue, and the wrongful death proceeds obtained by the Fitches, as noted above, are wholly distinct from the assets of the Fitch Estate under Ohio law. *See* Ohio Rev. Code § 2125.02(A)(1); *Goldberg*, 93 Ohio St.3d 160, 753 N.E.2d 192, 197; *Estate of Shackelford*, 2016-Ohio-1431, 63 N.E.3d 584 at ¶ 13.

Next, the Court must determine whether AEP's Complaint constitutes an action *in rem*. The Court finds that it does. As noted, an action *in rem* seeks to "determin[e] the title to property and the rights of the parties, not merely among themselves, but also against all persons at any time claiming an interest in that property." *Chevalier*, 803 F.3d at 802 (citing Black's Law Dictionary 498 (10 th ed. 2014)). "The property within the control of the court is the *res*." *Id*

These differ from actions *in personam*, which are "actions against a person" that can be enforced against the person's general assets (rather than a specific fund). *Id.*

Here, AEP has filed an ERISA § 502(a)(3) action which explicitly seeks to (i) impose equitable liens by agreement against the portions of the Settlement Proceeds obtained by, or in the possession of, the Fitches and (ii) enjoin the Fitches from "transferring or disposing of the settlement funds." (*Fitch II*, ECF No. 1.) Equitable liens by agreement have been recognized by the Supreme Court as enforceable under ERISA § 502(a)(3) "where money or property identified as belonging in good conscience to the plaintiff [can] clearly be traced to particular funds or property in the defendant's possession." *Montanile v. Bd. of Tr. Of Nat. Elevator Indus. Health Benefit Plan*, 577 U.S. 136, 143 (2016) (citation omitted). These liens attach to the specific funds whenever a named defendant obtains them and are enforceable against the world as a matter of right. *See* Lien, Black's Law Dictionary (11th ed. 2019) (defining an "equitable lien" as a "right, enforceable only in equity, to have a demand satisfied from a particular fund or specific property, without having possession of the fund or property"). AEP's Complaint alleges that the Fitches are "in actual or constructive possession" of the Settlement Proceeds, and, accordingly, the Court should enforce its asserted liens so that, "as a matter of equity and good conscience," AEP can be reimbursed under the AEP Plan. (*Fitch II*, ECF No. 1 at PageID #5-6.) Thus, even when construed in a light most favorable to AEP, both of AEP's claims, on their face, constitute actions *in rem*. *See Longaberger Co. v. Kolt*, 586 F.3d 459, 469 (6th Cir. 2009), *abrogated on other grounds by Montanile*, 577 U.S. at 146 (noting that Longaberger's claim to enforce an equitable lien by agreement under ERISA § 502(a)(3) constituted an action "*in rem*").

Finally, the Court must determine whether AEP's Complaint seeks to have the Court "elbow" itself into an "ongoing fight" over *res* that is within the "custody" or "control" of the

Probate Court. *Chevalier*, 803 F.3d at 802. "Case law does not extensively discuss what it means for property to be 'in the custody' of a probate court." *Boesky*, 305 F.Supp.3d at 785. Precedent does suggest, however, that a probate court's jurisdiction over a specific *res* dissolves when there are no more *res*-related proceedings for the court to conduct. *See Struck*, 508 F.3d at 860 (applying the probate exception because the probate court was still tasked with supervising the legal guardian of the *res* at issue); *Wolfram v. Wolfram*, 78 F.Supp.3d 758, 765 (N.D. Ill. 2015) ("[S]o if there never was a state court proceeding over the res or *all state court proceedings involving the res have ended*, then there is nothing to interfere with and the probate exception is inapplicable.") (emphasis added).

Here, the *res* at issue—the Settlement Proceeds—has already been allocated to Decedent's statutory heirs.  (*Fitch II*, ECF No. 1 at PageID #4.)  Neither party has presented evidence that the Settlement Proceeds have or have not been fully disbursed. At first glance, then, it is unclear whether this *res* remains "in the custody" of the Probate Court. The Sixth Circuit's decision in *Wisecarver v. Moore* is enough to satisfy the Court that it is. 489 F.3d 747 (6th Cir. 2007). In *Wisecarver*, the plaintiffs sought to enjoin the defendants from disposing of the assets of an estate that had already been probated. *Id.* at 748. Despite the fact the assets of the estate had been disbursed—as well as the fact the plaintiffs' claims constituted actions *in personam*—the Sixth Circuit nonetheless found the probate exception applicable. *Id.* at 750. This was so, the court reasoned, because the plaintiffs' requested relief "would require the district court to dispose of property in a manner inconsistent with the state probate court's distribution of assets." *Id.* at 750. The court simultaneously added that such relief was "precisely what the probate exception prohibits." *Id.*

22

Here, when the Administrator opened Decedent's estate, the Franklin County Probate Court assumed the exclusive jurisdiction to (i) "direct and control" the Administrator's conduct, (ii) "settle" his accounts, and (iii) "order the distribution" of the estate. Ohio Rev. Code § 2101.24(A)(1)(c). As far as this Court is aware, the Administrator's only existing "account" relates to the wrongful death proceeds at issue. Moreover, notwithstanding the Probate Court's allocation of the Settlement Proceeds, the Fitch Estate remains open.  (*Fitch II*, ECF No. 8 at PageID #40.)  Thus, were this Court to grant AEP's requested relief, it would both (i) impose upon the Probate Court's jurisdiction over the Administrator's account and/or its distribution of the Fitch Estate, and (ii) "require the district court to dispose of property in a manner inconsistent with" the Probate Court's judgment. *See Wisecarver*, 489 F.3d at 750.

Accordingly, the Court finds that the probate exception deprives this Court of subject matter jurisdiction over the entirety of AEP's Complaint. *Chevalier*, 803 F.3d at 802.

### C.  The Administrator's Motion to Remand *Fitch I*

#### 1.  Standard of Review

Federal courts, as courts of limited jurisdiction, may only "entertain the merits of a case removed from state court" if it first determines "whether the action was properly removed in the first place." *Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 453 (6th Cir. 1996). This inquiry requires the court to resolve the same basic question raised by a Rule 12(b)(1) motion—that is, whether the court has subject matter jurisdiction over the removed action. 29 U.S.C. §1441(a). The defendant who removes the case "bear[s] the burden of establishing federal subject matter jurisdiction." *Bloomfield*, 100 F.3d at 453-54. Federal courts are additionally cautioned to "strictly construe[]" the removal statute and resolve all doubts in favor of remand. *Eastman v. Marine Mech. Corp.*, 438 F.3d 544, 550 (6th Cir. 2006) (citation omitted).

Ordinarily, where, as here, a defendant removes a claim solely on the basis of federal question jurisdiction, the court to which the claim was removed will assess whether the plaintiff's complaint, on its face, seeks to enforce a right established under the Constitution, laws, or treaties of the United States. 28 U.S.C. §§ 1331, 1441(a); *Davila*, 542 U.S. at 207. Under this "well-pleaded complaint" rule, federal courts usually lack federal question jurisdiction over a complaint that exclusively relies on state law. *Allstate v. Nowakowski*, 861 F.Supp.2d 866, 870 (W.D. Mich. 2012) (citation omitted).

The jurisdictional analysis related to an action for declaratory relief, however, is different. In that context, "the realistic position of the parties is reversed," given that the declaratory plaintiff is usually "seeking to establish a defense against" a cause of action that the declaratory defendant could otherwise assert. *Rodriguez v. Tenn. Lab. Health & Welfare Fund*, 463 F.3d 473, 476 (6th Cir. 2006) (quoting *Pub. Serv. Comm. v. Wycoff Co.*, 344 U.S. 237, 248 (1952)); *see also Severe Records, LLC v. Rich*, 658 F.3d 571, 581 (6th Cir. 2011) ("Federal question jurisdiction 'exists in a declaratory judgment action if the plaintiff has alleged facts in a well-pleaded complaint which demonstrate that the defendant *could* file a coercive action arising under federal law.'") (citing *Stuart Weitzman, LLC v. Microcomputer Res., Inc.*, 542 F.3d 859, 862 (11th Cir. 2008)).

Accordingly, when a federal court seeks to determine whether it has federal question jurisdiction over a declaratory action, it is "the character of the [declaratory defendant's] threatened action"—and not solely the law that the declaratory plaintiff relies upon in its complaint—"which will determine whether there is federal-question jurisdiction in the District Court." *Rodriguez*, 463 F.3d at 476. The key question, in other words, is "whether the federal courts would have subject matter jurisdiction over the threatened claim." *Id.* at 477.

## 2.  The "Complete Preemption" Doctrine

Normally, the defenses inherently raised by a complaint—such as whether the plaintiff's cause of action is preempted by federal law—are immaterial to the "well-pleaded complaint" analysis. *Matthews v. Centrus Energy Corp.*, No. 20-3885, 2021 WL 4570877, at *3 (6th Cir. Oct. 6, 2021). The "complete preemption" doctrine, however, is a narrow exception to this principle. *Davila*, 542 U.S. at 207. Specifically, it allows a cause of action involving an ERISA-regulated benefit plan to be removed to federal court if it "duplicates, supplements, or supplants" any of the civil enforcement remedies in ERISA § 502(a), "even if it makes no reference to or has no explicit connection to ERISA." *Id.* at 209; *K.B. by and through Qassis v. Methodist Healthcare – Memphis Hosp.*, 929 F.3d 795, 800 (6th Cir. 2019). The purpose of this exception, as noted by the Supreme Court in *Pilot Life Ins. Co. v. Dedeaux*, is to ensure that the "policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme" are not "completely undermined" by plan participants and beneficiaries who seek different remedies under state law. 481 U.S. 41, 54 (1987).

Here, the Fitch Estate's declaratory action does not cite or otherwise reference any part of ERISA. (*See Fitch I*, ECF No. 1-2 at PageID #9-11.)  Recognizing that this likely doomed the Fitch Estate's complaint from passing muster under the traditional "well-pleaded complaint" rule, the AEP Plan removed it to federal court on the grounds that the Administrator's cause of action was "completely preempted" by ERISA § 502(a).  (*Fitch I*, ECF No. 1 at PageID #3.) Notably, the AEP Plan's Notice of Removal does not identify which provisions of ERISA § 502(a) the Administrator's declaratory action supposedly emulates, which, as noted, is a requirement of the "complete preemption" doctrine.  (*Id.*)  Only in its Response in Opposition to the Estate's Motion to Remand does the AEP Plan attempt to characterize the declaratory action

as one that could have been brought under ERISA §§ 502(a)(1)(B) or 502(a)(3).  (*See Fitch I*,

ECF No. 14 at PageID #69-70.)

      For present purposes, however, the relevant point of reference for determining whether

the AEP Plan properly removed the Fitch Estate's declaratory action is *not* the action itself.

Rather, it is the "threatened action" that the Fitch Estate anticipated when it filed its complaint—

which, under the circumstances, only seems to have been an equitable action for reimbursement

brought by AEP (and/or the AEP Plan) under ERISA § 502(a)(3).[7] *See Rodriguez*, 463 F.3d at

476. That, of course, is the exact complaint AEP filed in *Fitch II*, which this Court has already

determined does not fall within its subject matter jurisdiction.

### a.  Analysis

      In their briefing for the Fitch Estate's Motion to Remand, both parties raise and dismiss

the "threatened action" analytical framework that the Court now applies because *Rodriguez*—the

sole case cited by either party where the framework applied—"did not involve removal," and,

thus, did not touch upon the issue of complete preemption.  (*Fitch I*, ECF Nos. 14 at PageID

#67l, 15 at PageID #91.)  That detail, however, is immaterial, given that *Rodriguez* sought to

answer the same basic question now before the Court—that is, whether an action for declaratory

relief brought by the participant of an ERISA-regulated plan sufficiently invokes the Court's

subject matter jurisdiction. *Rodriguez*, 463 F.3d at 475.

      To be sure, *Rodriguez* involved a plaintiff who filed a declaratory action that sought "a

declaration of rights" under a specific benefit plan pursuant to ERISA §§ 502(a)(1)(B) and

---

[7] The Fitch Estate correctly states that the "threatened action" its complaint sought to defend against was the AEP Plan's assertion of a lien on the Settlement Proceeds.  (*Fitch I*, ECF No. 15, at PageID #93.)  In that context, the Fitch Estate argues that "the way a decedent's creditor—including an ERISA plan—makes good on that threat is by objecting in the probate court to the court's allocation of settlement proceeds."  (*Id.*). Thus, according to the Fitch Estate, the only relevant action that "threatened" it when it filed its declaratory action was "probate in nature."  (*Id.*) This argument, however, disregards the fact AEP—as it ultimately did here—could assert a claim for reimbursement under ERISA § 502(a)(3).  (*Fitch II*, ECF No. 1.)

502(a)(3). *Id.* Thus, unlike here, the *Rodriguez* plaintiff (i) was a living plan participant who (ii) filed his declaratory action in federal court and (iii) explicitly sought to enforce his rights under ERISA. *See id.* None of these differences, however, were of much relevance to the Sixth Circuit's decision, which, again, broadly sought to determine whether the lower court could exercise subject matter jurisdiction over the plaintiff's complaint. *Id.* Ultimately, the Sixth Circuit found that it could, as one "relevant threatened claim" addressed by the plaintiff's declaratory action was, inter alia, "a claim by the [benefit plan] for reimbursement under ERISA." *Id.* at 477.

Here, when the Fitch Estate filed its declaratory action, it was "threatened" by the same claim—that is, an ERISA § 502(a)(3) claim for reimbursement. *Id.* at 475. Unlike in *Rodriguez*, however, here the Court, as determined above, could not (and cannot) exercise jurisdiction over this "threatened claim." *See supra* Part II.A. Thus, the declaratory action was not properly removed, and remand is warranted.

Both parties, as noted, did not pursue this line of analysis. Yet, even on the arguments they raise, remand would still be necessary. In their briefing, both parties narrowly focused on why the Fitch Estate's declaratory action, on its face, is or is not "completely preempted" by ERISA § 502(a) pursuant to the Supreme Court's holding in *Davila*. (*See Fitch I*, ECF Nos. 14-15.) The *Davila* Court, however, faced a materially different scenario than the one here. There, the respondent-plaintiffs brought a litany of state law tort suits against two "ERISA-regulated employee benefit plans" for the denial of benefits in state court. *Davila*, 542 U.S. at 204-05. Consequently, the defendants removed the complaints on the basis that they effectively mirrored ERISA § 502(a)(1)(B) enforcement actions, and, thus, fell within the exclusive jurisdiction of the federal judiciary under the "complete preemption" doctrine. *Id.* The Supreme Court agreed, and,

27

in the process, elaborated a two-part test for determining when the "complete preemption" doctrine applies:

> It follows that if an individual brings suit complaining of a denial of coverage for medical care, where the individual is entitled to such coverage only because of the terms of an ERISA-regulated employee benefit plan, and where no legal duty (state or federal) independent of ERISA or the plan terms is violated, then the suit falls "within the scope of" ERISA § 502(a)(1)(B). *Metropolitan Life*, supra, at 66, 107 S.Ct. 1542. In other words, if an individual, at some point in time, could have brought his claim under ERISA § 502(a)(1)(B), and where there is no other independent legal duty that is implicated by a defendant's actions, then the individual's cause of action is completely pre-empted by ERISA § 502(a)(1)(B).

*Id.* at 210. The Sixth Circuit has since reiterated *Davila*'s two-part test, stating:

> [A] claim is within the scope of [ERISA § 502(a)(1)(B)] . . . if two requirements are met: (1) the plaintiff complains about a denial of benefits to which he is entitled 'only because of the terms of an ERISA-regulated benefit plan' and (2) the plaintiff does not allege the violation of "any legal duty (state or federal) independent of ERISA or the plan terms[.]

*Gardner v. Heartland Indus. Partners, LP,* 715 F.3d 609, 613 (6th Cir. 2013) (citation omitted)

Here, the AEP Plan contends that the Administrator's declaratory action (i) constitutes a claim for the denial of benefits and (ii) does not allege the violation of an independent legal duty.[8] (*See Fitch I*, ECF No. 14.) This, as the Administrator correctly notes, defies the explicit wording of ERISA § 502(a)(1)(B), an enforcement remedy that is only available to plan participants or their beneficiaries. *See* 29 U.S.C. § 1132(a)(1)(B); *Franchise Tax Bd. v.*

---

[8] Much of the AEP Plan's argument for "complete preemption" hinges on the fact that the Fitch Estate's declaratory action seeks a declaration that the Plan "is entitled to no monies as a result of Decedent's accident." (*See Fitch I*, ECF No. 14 at PageID #67.) The AEP Plan argues that, should a court grant the Fitch Estate's requested relief, such a declaration would not only "prohibit . . . [the Plan] from enforcing its plan terms against wrongful death proceeds," but would also bar it from "asserting its claim against any proceeds eventually allocated to [Decedent's] estate from past or future settlements." (*Id.*) Two points undermine this contention. First, as the Administrator correctly argues, the action for declaratory relief, when "read as a whole," solely pertains to the Settlement Proceeds. (*See Fitch I*, ECF No. 15 at PageID #92.) Second, as covered in Part II.B., Ohio probate courts hold the "plenary power" to adjudicate ERISA reimbursement claims lodged against a decedent's estate. Thus, should the Administrator obtain settlement funds that qualify as assets of the Fitch Estate, the AEP Plan may not be barred from asserting a claim for reimbursement.

*Construction Laborers Vacation Trust*, 463 U.S. 1, 4 (1983) (holding that a state tax authority could not bring a declaratory action under ERISA because "ERISA carefully enumerates the parties entitled to seek relief under § 502" and "does not provide anyone other than participants, beneficiaries, or fiduciaries with an express cause of action for declaratory judgment"). The Administrator (or the estate he represents) qualifies as neither. For the same reason, the Fitch Estate would be barred from bringing an action to enforce its rights under ERISA § 502(a)(3). *See* 29 U.S.C. § 1132(a)(1)(B).

Nevertheless, for purposes of deciding the Fitch Estate's Motion to Remand, the relevant inquiry is whether the Court "would have subject matter jurisdiction over" a reimbursement claim brought by the AEP Plan under ERISA § 502(a)(3). *See Rodriguez*, U.S. 463 F.3d at 476-77. The Court has already determined it does not. Thus, the AEP Plan has failed to carry its burden to prove that it properly removed the Administrator's declaratory action. *See Bloomfield*, 100 F.3d at 453-54.

### III. The Fitches' Remaining Motions

When a defendant moves under Fed. R. Civ. P 12(b)(1) and Fed. R. Civ. P 12(b)(6) to dismiss a plaintiff's complaint for both lack of subject matter jurisdiction and for the failure to state a claim, courts are required to "consider the 12(b)(1) motion first, since the Rule 12(b)(6) challenge becomes moot if [the] court lacks subject matter jurisdiction." *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990). Accordingly, because the Court lacks subject matter jurisdiction over AEP's Complaint, it cannot and does not decide the Fitches' Motion to Dismiss for Failure to State a Claim.  (*Fitch II*, ECF No. 8 at PageID #44-52.) For the same reasons, the Fitches' motion in the alternative asking the Court to abstain from

hearing the matter until after the Procate Court closes the Fitch Estate is moot. (*See id.* at

PageID #52-54.)

## IV. Conclusion

In sum, the probate exception deprives the Court of subject matter jurisdiction over

AEP's Complaint, and, for that reason, the Estate's declaratory action must be remanded.

Accordingly, for the foregoing reasons, the Court holds as follows:

1.  The Fitches' Motion to Dismiss is **GRANTED**. (*Fitch II*, Case No. 2:21-cv-682, ECF No. 8.) The Clerk is **DIRECTED** to **CLOSE** this case on the docket of this Court.

2.  The Administrator's Motion to Remand is **GRANTED**. (*Fitch I*, 2:21-cv-576, ECF No. 10.) The Clerk is **DIRECTED** to **REMAND** this action to the Franklin County Probate Court and to **CLOSE** the case on the docket of this Court.

**IT IS SO ORDERED.**

<u>**12/2/2021**</u>                                             <u>**s/Edmund A. Sargus, Jr.**</u>
**DATE**                                                **EDMUND A. SARGUS, JR.**
                                                        **UNITED STATES DISTRICT JUDGE**