UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

---

**JOHN K. FITCH, as administrator of the**
**ESTATE OF JOHN D. FITCH**

          **Plaintiff,**          **Case No. 21-cv-576**
                                          **JUDGE EDMUND A. SARGUS, JR.**
   **v.**                               **Magistrate Judge Elizabeth P. Deavers**

**AMERICAN ELECTRIC POWER SYSTEM**
**COMPREHENSIVE MEDICAL PLAN,**

          **Defendant.**

---

**AMERICAN ELECTRIC POWER**
**SERVICE CORPORATION, as**
**fiduciary of the AMERICAN**
**ELECTRIC POWER SYSTEM**
**COMPREHENSIVE MEDICAL PLAN**

          **Plaintiff,**          **Case No. 2:21-cv-682**
                                          **JUDGE EDMUND A. SARGUS, JR.**
   **v.**                               **Magistrate Judge Elizabeth P. Deavers**

**JOHN K. FITCH, as administrator of the**
**ESTATE OF JOHN D. FITCH, AND GLORI**
**FITCH,**

          **Defendants.**

---

## OPINION AND ORDER

This matter arises on John K. and Glori Fitch's (the "Fitches") Motion for Attorney's Fees, which is now pending in the above-captioned cases. (*Fitch v. Am. Elec. Power Sys. Comprehensive Med. Plan* ("*Fitch I*"), No. 21-cv-576-EAS-EPD, ECF No. 20); (*Am. Elec. Power Serv. Corp. v.*

1

*Fitch* ("*Fitch II*"), No. 21-cv-682-EAS-EPD, ECF No. 16.) For the reasons stated herein, the Fitches' motion is **DENIED**.

I.

The Fitches' pending Motion for Attorney's Fees comes as the latest installment in a dispute over certain wrongful death proceeds allocated to them by the Franklin County Probate Court (the "Probate Court"). The facts underlying that dispute, as laid out in the Opinion and Order issued by this Court on December 2, 2021 (the "December 2 Opinion"), are herein adopted by reference. (*See* ECF No. 16, *Fitch I.*) The following points are of particular relevance:

In October 2019, the Fitches son, John D. ("Jack") Fitch tragically lost his life in a car accident. At the time, Jack was enrolled as a beneficiary of a self-funded employee welfare benefit plan ("Plan") administered by his mother Glori's employer, American Electric Power Service Corporation ("AEP"). That Plan vested AEP with certain rights to obtain reimbursement for any medical expenses it paid on behalf of a beneficiary like Jack. AEP maintains that it paid such expenses on Jack's behalf while he was in critical condition, shortly before he passed.

Over the next year, the Fitches settled various claims with two insurance companies for a total amount of $600,000 (the "Settlement Proceeds"). In May 2020, Anthem Blue Cross and Blue Shield ("Anthem"), AEP's claims administrator, notified the Fitches of AEP's intention to seek reimbursement under the Plan for the expenses it allegedly paid for Jack's medical treatment. (*Fitch I*, ECF No. 14-1.)

On October 12, 2020, the administrator of Jack's estate—his father, John K. Fitch—filed an application with the Probate Court to allocate the Settlement Proceeds as wrongful death funds. (*Fitch I*, ECF No. 14-2 at PageID #81.) Therein, Mr. Fitch acknowledged, among other things, that Anthem "was asserting a lien totaling $101,582.46" against Jack's estate, and that "said lien would

be disputed by the Fitch Estate under Ohio law." (*Fitch I*, Op. & Order, ECF No. 16.) The application was approved that same day without a hearing (the "Approval").

After the Approval, AEP again notified the Fitches that "it would have a lien on any settlement proceeds allocated to" Jack's survival estate, "and in addition could assert a lien on any wrongful death proceeds" his kin received. (*Fitch I*, ECF No. 14.) The Fitches disputed these claims, noting specifically in their response that (1) the Probate Court had already allocated the Settlement Proceeds as wrongful death funds, and (2) "there [were] no assets in [Jack's] estate, and, thus, nothing for [AEP] to recover." (*Fitch I*, ECF No. 14-2.)

To resolve their disagreement, the Fitches filed an action for declaratory relief—*Fitch I*—in the Franklin County Court of Common Pleas in January 2021. (*Fitch I*, ECF No. 2) (seeking a judicial declaration that the "AEP Medical Plan is entitled to no monies as a result of the Decedent's Accident"). AEP,[1] citing the "complete preemption" doctrine, removed that case to this Court the next month. Simultaneously, AEP filed *Fitch II*—an action for reimbursement arising under the Employee Retirement Income Security Act of 1974 ("ERISA")—against the Fitches.

In March 2021, the Fitches moved to remand *Fitch I* and dismiss *Fitch II*. In December 2021, this Court granted both motions, finding, in essence, that the "probate exception" deprived it of subject-matter jurisdiction over both cases. (*Fitch I*, Op. & Order, ECF No. 16.) AEP partially appealed, and the United States Court of Appeals for the Sixth Circuit affirmed on forfeiture grounds. (*Fitch II*, ECF No. 21.) While AEP's appeal pended, the Fitches filed their instant Motion for Attorney's Fees, to which the Court now turns.

---

[1] Though a distinct entity, for ease of reference, the Court refers to AEP's Comprehensive Medical Plan—the defendant in *Fitch I*—as "AEP" throughout this Opinion.

## II.

The Fitches predicate their Motion for Attorney's fees on two different sources of law: (1) 28 U.S.C. § 1447(c), which allows a successful remand movant to be awarded "just costs . . . including attorney fees, incurred" in obtaining remand, and (2) 29 U.S.C. § 1132(g), which permits courts to award "reasonable attorney's fee[s]" to the prevailing party in an ERISA suit. The Fitches seek fees for the remand of *Fitch I* under the former statute, and fees for the dismissal of *Fitch II* under the latter.

## III.

### A. Fees for the Remand of *Fitch I*

"The standard for awarding fees" under § 1447(c) "turn[s] on the reasonableness of the removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005). This discretionary standard is not "without limits," and generally permits an award only where the removing party lacked an "objectively reasonable basis for seeking removal"—*e.g.*, where removal was "sought for the purposes of prolonging litigation and imposing costs on the opposing party." *Id.* at 139-41. "Conversely, when an objectively reasonable basis [for removal] exists, fees should be denied." *Id.* at 141.

The Fitches contend that AEP's "asserted basis" for removing *Fitch I*—the "complete preemption" doctrine—was not "objectively reasonable." (*Fitch II*, ECF No. 16 at PageID #294.) In support, they point to (1) AEP 's failure to initially specify the specific statutory basis for its "complete preemption" theory, and (2) this Court's ultimate finding that AEP's "complete preemption" argument lacked merit. (*See id.* at PageID #293-94.) None of these arguments carries the day. The fact AEP did not initially cite the specific ERISA provision upon which it based its "complete preemption" theory—while perhaps vexing to the Fitches—does not mean it lacked an

4

"objectively reasonable" basis to believe that theory applied. Nor does the fact this Court ultimately disagreed with AEP's "complete preemption" argument. *See Dunaway v. Pursue Pharma L.P.*, 391 F. Supp. 3d 802, 816 (M.D. Tenn. 2019) (holding that attorney's fees under § 1447(c) were not warranted notwithstanding the defendant's unmeritorious argument for removal, particularly given "the complex interrelationship of state and federal laws in this area").

AEP construed the Fitches' declaratory action (which was not initially filed in the Probate Court) to have divested the Probate Court of jurisdiction over *Fitch I*. The law of Ohio, as set forth in the December 2 Opinion, led this Court to conclude otherwise. Nevertheless, AEP had, at a minimum, a good faith basis to believe that *Fitch I* was to be litigated in a court of general jurisdiction. And absent this Court's application of the "probate exception," its position seemingly would have had merit. (*Fitch I*, Op. & Order, ECF No. 16 at PageID #134) (noting that, for purposes of deciding the Fitches' remand motion, the "relevant inquiry" was whether the Court "would have subject matter jurisdiction" over a reimbursement claim brought by the Plan under ERISA § 502(a)(3)) (citing *Rodriguez v. Tenn. Lab. Health & Welfare Fund*, 463 F.3d 473, (6th Cir. 2006)); (*see id.* at PageID #113) (noting that federal courts, as a general matter, maintain exclusive jurisdiction to resolve ERISA claims, including those asserted under ERISA § 502(a)(3)).

For these reasons, the Court cannot say AEP lacked an "objectively reasonable" basis to remove *Fitch I*. *See Martin*, 546 U.S. at 141.

  **B. Fees for the Dismissal of *Fitch II***

As noted, 29 U.S.C. § 1132(g)(1) vests federal courts with the discretion to award "reasonable attorney's fees and costs" to "either party" in an ERISA dispute, provided that the "fee claimant has achieved 'some degree of success on the merits.'" *Groth v. CenturyLink Disability*

5

*Plan*, No. 2:13-cv-1238, 2015 WL 1396380, at *2 (S.D. Ohio Mar. 25, 2015) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 256 (2010)). Prevailing on the merits, however, is only the first step in the fee-shifting inquiry. *See id.* To obtain an award, the claimant's fee request must *also* pass muster under a five-factor balancing test originally set forth in *Sec'y of Dep't of Labor v. King*, 775 F.2d 666 (6th Cir. 1985). These five "*King*" factors include:

> (1) the degree of the opposing party's culpability or bad faith; (2) the opposing party's ability to satisfy an award of attorney's fees; (3) the deterrent effect of an award on other persons under similar circumstances; (4) whether the party requesting fees sought to confer a common benefit on all participants and beneficiaries of an ERISA plan or resolve significant legal questions regarding ERISA; and (5) the relative merits of the parties' positions.

*Id.* at 669; *accord McKay v. Reliance Standard Life Ins. Co.*, 428 Fed. App'x 537, 545-46 (6th Cir. 2011).

### i. "Success on the Merits"

AEP concedes that by obtaining dismissal of *Fitch II* on subject-matter grounds, the Fitches "have obtained some success on the merits," thus allowing this Court to assess their fee claim under *King*. (*Fitch II*, ECF No. 19 at PageID #322.) AEP bases this acknowledgement on the Supreme Court of the United States' decision in *CRST Van Expedited, Inc. v. E.E.O.C.*, 578 U.S. 419, 431-32 (2016)—which, among other things, held that fee claimants under Title VII may recover attorney's fees even if they prevail for a "nonmerits"-based reason (*i.e.*, the absence of subject-matter jurisdiction). 578 U.S. 419, 431-33 (2016). That holding, however, does not square with the Sixth Circuit's pre-*CRST* decision in *Primax Recoveries, Inc. v. Gunter*, which unambiguously noted that "a court without subject-matter jurisdiction over an ERISA action lacks the authority to award attorney's fees." 433 F.3d 515, 520 (6th Cir. 2006).

At least one court in this circuit has interpreted *CRST*'s reasoning to nullify *Primax*'s narrower approach to ERISA's fee-shifting provision. *See City of Riverview v. Operating Eng'rs*

6

*Loc. 324 Pension Fund*, No. 18-11370, 2019 WL 8101970, at *1 n.3 (E.D. Mich. Nov. 14, 2019) (finding, in light of *CRST*, that *Primax*'s discussion of the attorney's fees standard in ERISA cases was "outdated"), *adopted* 2020 WL 1443203. The Sixth Circuit, however, seemingly has yet to do the same. And in the absence of such confirmation, this Court—while of the mind that *CRST* is applicable here—is hesitant to overtly write off *Primax* altogether.

Nevertheless, even assuming that *Primax* is no longer applicable, the result is all the same. That is, on balance, the *King* factors do not weigh in favor of a fee award.

    ii.    *King* **Factors**

        **1.    Degree of Culpability or Bad Faith**

The threshold for demonstrating culpability or bad faith in an ERISA action is relatively high. An ERISA plaintiff is said to act in bad faith when, for example, he or she brings "near frivolous" claims, unnecessarily prolongs litigation, files unreliable briefs, or pursues arguments even after their rejection by the court. *See Moore v. Lafayette Life Ins. Co.*, 458 F.3d 416, 445 (6th Cir. 2006). And generally, for this factor to carry weight, there must be some indicia that the plaintiff—here, AEP—acted with an "improper purpose." *See, e.g.*, *Wolf v. Causley Trucking Inc.*, No. 15-CV-12530, 2017 WL 5291488, at *3 (E.D. Mich. Nov. 13, 2017).

There is no meaningful evidence AEP brought *Fitch II* in bad faith. AEP had a reasonable basis to believe that the Plan vested it with enforceable, equitable rights against the Fitches. Acting upon that belief by bringing an ERISA action was not, on its face, "improper." Likewise, the fact that action was ultimately undercut by a niche jurisdictional caveat (*i.e.*, the probate exception) does not mean it was "near frivolous" or brought in bad faith. *See Wolf*, 2017 WL 5291488 at *3 ("[T]here mere fact that an action is without merit does not amount to bad faith.") (citation omitted).

The Fitches note repeatedly that AEP's "litigation strategy has . . . imposed significant delay and costs," and that AEP has failed to "explain how it was precluded from intervening and objecting in the probate court ten days after that court" allocated the Settlement Proceeds to the Fitches' wrongful death action. These points, while fair, do little to change the equation. At the end of the day, AEP had an honest, good-faith basis to bring its ERISA claims. And while AEP seemingly could have gone about the maneuver differently (*i.e.*, by intervening in the Probate Court once it learned of the Approval), it is unclear how much more efficient (or less costly) that process would have been. The Fitches, for their part, do not shed light on the matter.

Accordingly, this factor does not weigh in favor of a fee award.

### 2. Opposing Party's Ability to Satisfy an Award of Attorney's Fees

The parties agree that AEP maintains the ability to satisfy the Fitches' fee request, which is just shy of $25,000. (*See Fitch II*, AEP Resp., ECF No. 19 at PageID #325.) Nevertheless, as AEP notes, this factor exists "more for exclusionary than for inclusionary purposes." *Warner v. DSM Pharma Chem. N. Am., Inc.*, 452 Fed App'x 677, 682 (6th Cir. 2011). That means it carries little overall import in this analysis. *See Tr. of Det. Carpenters Fringe Benefits v. Patrie Const. Co.*, 618 Fed App'x 246, 259 (6th Cir. 2015).

### 3. Deterrent Effect of an Award

The Fitches, reiterating that AEP could have asserted its equitable claims (or, at the very least, intervened) in the Probate Court, assert that "a fee award here will incentivize plan administrators to proactively and efficiently assert their rights against a decedent's estate in the proper forum," and likewise deter them from "saddling the survivors of decedents—who often may not be plan participants or beneficiaries themselves—with costly legal bills." (*Fitch II*, ECF No. 16 at PageID #299.) AEP, by contrast, argues it only chose to bring *Fitch II* after John K.

8

Fitch, as the administrator of his son's estate, mistakenly filed *Fitch I* in the Franklin County Court of Common Pleas (rather than the Probate Court)—a happenstance that AEP contends is "unlikely to occur again." (ECF No. 19 at PageID #326.)

It is clear enough that both parties here failed to take the most efficient path to resolving their dispute. The Fitches, for their part, did not bring *Fitch I* in the forum in which it actually belonged (the Probate Court), and declined to notify AEP of its application to the Probate Court until ten days after its approval. AEP, on the other hand, *could* have attempted to challenge the Probate Court's allocation decision directly (*i.e.*, by timely intervening and objecting)[2] before removing *Fitch I* and bringing *Fitch II*. This confluence of decisions and events is certainly unique. And given that fact, as well as the absence of any "deliberate misconduct" on AEP's part, the Court is not persuaded that a fee award here will add much of a deterrent effect. *See Foltice v. Guardman Prods., Inc.*, 98 F.3d 933, 937 (6th Cir. 1998) (noting that "fee awards are likely to have the greatest deterrent effect where deliberate misconduct is in the offing"). If anything, AEP's costs of litigating *Fitch II* (both in this Court and on appeal) should be enough to deter future benefit plans or fiduciaries who find themselves in similar circumstances from following in its footsteps (*i.e.*, by choosing to forego a probate court challenge *before* bringing an equitable claim for reimbursement).

Accordingly, this factor does not weigh in favor of an award.

---

[2] *See* Ohio R. Civ P. 24(A)(2) (permitting intervention "when the applicant claims an interest relation the property or transaction that is subject of the [civil] action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest"); Ohio R. Civ. P. 60(B) (allowing Ohio courts to grant relief from final judgment upon a motion made within a "reasonable" amount of time).

9

### 4. Whether Fee Claimant Sought to Confer Common Benefit or Resolve Significant Legal Questions Regarding ERISA

There is, as AEP notes, no evidence the Fitches "sought to confer a common benefit on all participants and beneficiaries of an ERISA plan" by challenging AEP's right to reimbursement in *Fitch I*. This Court's disposition of *Fitch I* and *II* did not rest on an interpretation of Plan language or clarify a right widely held by the Plan's participants (or their beneficiaries); it centered on the interplay between ERISA, the "probate exception," and Ohio probate law. True, the Court's holding spoke to the "scope" of the probate exception in the ERISA context. (ECF No. 20 at PageID #339.) But given the unique circumstances of this case, it is, to say the least, unclear whether its conclusion will have much applicability to anyone other than the parties at bar.

To that extent, this factor only slightly (if at all) weighs in favor of an award.

### 5. Relative Merits of the Parties' Position

AEP concedes—and the Court agrees—that, given *Fitch II*'s ultimate dismissal, this factor "slightly" weighs in the Fitches' favor. There are several reasons for this limited view. For one, the Court explicitly did not reach the merits of AEP's equitable claims; it merely determined it lacked the authority to adjudicate them based on the content of AEP's complaint. (*Fitch I*, Op. & Order, ECF No. 12 at PageID #261, 276.) And that determination was at least somewhat influenced by AEP's failure to address the fulcrum of the Fitches' argument for dismissing *Fitch II* on subject-matter grounds: the Sixth Circuit's decision in *Wisecarver v. Moore*, 489 F.3d 747 (6th Cir. 2007). (*See Fitch II*, ECF No. 11 at PageID #240) (noting that "AEP's Response does not address *Wisecarver* at all"); (*Fitch I*, Op. & Order, ECF No. 16 at PageID #127-28) (finding, under *Wisecarver*, that the probate exception applied).

### 6. Balance of Factors

It is well-settled that "[n]o single factor" is determinative of the *King* analysis. *Moon v. Unum Provident Corp.*, 461 F.3d 639, 642-43 (6th Cir. 2006). That is, the *King* factors merely offer a "flexible" framework for courts to consider when it determines the propriety of awarding fees under § 1132(g)(1). *Id.* Here, some aspects of this framework—factors two, four, and five—slightly, if at all, weigh in the Fitches' favor. The other two factors affirmatively do not. And on balance, the absence of any meaningful "culpability" or "bad faith" conduct from AEP, the uniqueness of this case, and the limited scope of the December 2 Opinion lead this Court to conclude that a fee award here is not appropriate.

### IV.

For the foregoing reasons, the Fitches' Motion for Attorney's Fees is **DENIED**. (*Fitch I*, ECF No. 20); (*Fitch II*, ECF No. 16.) This case shall remain closed.

**IT IS SO ORDERED.**

**9/22/2022**                                          s/Edmund A. Sargus, Jr.
**DATE**                                               EDMUND A. SARGUS, JR.
                                                       UNITED STATES DISTRICT JUDGE